UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TRACY FLAGG,

        Plaintiff,

v

BOARD OF EDUCATION OF THE
CORUNNA PUBLIC SCHOOLS,

        Defendant.

# COMPLAINT

NOW COMES the Plaintiff, Tracy Flagg, by and through her counsel, LOOMIS, EWERT, PARSLEY, DAVIS & GOTTING, P.C., and for her Complaint against Defendant Board of Education of the Corunna Public Schools (hereinafter "Corunna Public Schools" or "Defendant") states as follows:

## Parties, Jurisdiction & Venue

1. Tracy Flagg is an individual who resides in Shiawassee County, Michigan.

2. Defendant Corunna Public Schools is a Michigan public school district, located within Shiawassee County, Michigan, organized and determined pursuant to the provisions of the Michigan Revised School Code, Public Act 451 of 1976, as amended; Mich Comp. L. §380.1 *et seq.*, and which is governed by the duly elected Board of Education thereof. The offices of the Corunna Public Schools are located at: 124 N. Shiawassee Street, Corunna, Michigan.

3. This is a complaint seeking redress for violations of federal law, including the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601 *et seq.*, as well as

claims under Michigan law which arise from a common nucleus of operative facts. This Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §1331, and pendent jurisdiction over the state law claims under 28 U.S.C. §1367.

4.  This Court has personal jurisdiction over the Defendant, and venue is appropriate in this district, as Corunna Public Schools is a Michigan public corporation with its offices located within this judicial district; namely, within Shiawassee County, Michigan. In addition, Plaintiff is a resident of Shiawassee County, Michigan.

## GENERAL ALLEGATIONS

5.  Plaintiff Tracy Flagg was employed by Defendant in various capacities from 1998 until November 6, 2009. Most recently, Ms. Flagg was employed as CPS' Business Manager, under an employment agreement dated June 4, 2009 ("Agreement"). *See* attached **Exhibit "A."** Ms. Flagg reported directly to Defendant's Superintendent, Dr. Mark Miller.

6.  Pursuant to the Agreement, Ms. Flagg was employed "for a term of two (2) years from July 1, 2009 through June 30, 2011." Agreement, §2. Her annual salary was initially set at $54,975, including step increases of $2,644 per year, in addition to the percentage raise given to all other employees of the district. Agreement, §4. She was also entitled to fringe benefits as described in §5 of the Agreement.

7.  Defendant CPS is a "local educational agency" as defined in 20 U.S.C. §7801, and therefore is an "employer" for purposes of the FMLA, per 29 U.S.C.

2

§2618(a)(2)(B), and all of the remedies and procedures provided thereunder are applicable to Defendant per 29 U.S.C. §2618(a)(1).

8. Ms. Flagg has always performed all of the duties of her job in a professional manner. Her written performance evaluations reflect that she has consistently met or exceeded her employer's expectations. Her performance has been rated as "exemplary," and her most recent performance evaluation described her as a "successful business manager."

9. In early 2009, Ms. Flagg advised Superintendent Miller that she was pregnant, and expecting the birth of her child to occur in early July. Ms. Flagg also advised Superintendent Miller at that time that she would be taking leave due to the birth of her child.

10. Ms. Flagg and Superintendent Miller discussed Ms. Flagg's job duties, and discussed how those duties would be covered during her anticipated leave. Ms. Flagg recommended that CPS obtain additional, temporary help to cover her job duties during her leave, since the district's annual audit would be occurring about that time, and because the other administrative employee, Ms. Jodi Kingsbury, was not trained in all of the functions of Ms. Flagg's job. Ms. Flagg advised Dr. Miller to get someone from RESD to cover her duties during her leave.

11. Ms. Flagg requested a leave of absence from work, due to the birth of her child, commencing on July 6, 2009. Ms. Flagg advised that she intended to take a 12-week leave of absence. On July 8, 2009 CPS sent a letter confirming Ms. Flagg's family medical leave, as well as confirming her eligibility for such leave under FMLA. The district's July 8, 2009 letter confirms that Ms. Flagg was entitled to twelve (12) weeks of

FMLA leave, and confirms that CPS would count this maternity leave against her twelve-week leave entitlement under FMLA. *See* attached **Exhibit "B."**

12. Ms. Flagg began her leave of absence on July 6, 2009. Her child was born on July 8, 2009.

13. Throughout her FMLA leave, Ms. Flagg was repeatedly asked to answer questions and address work-related issues by her employer. On several occasions, she was required to come to the office to address work-related matters. Throughout her leave, Ms. Flagg continued to be paid her salary. Her employer deducted time from her bank of accrued paid time off to accomplish this. However, on those occasions when Ms. Flagg was required to perform services for her employer, she was not paid any additional amounts, nor was her bank of accrued paid time off credited for that time.

14. Further, in late August 2009 Ms. Flagg was told by Dr. Miller that she must provide a note from her doctor in order to extend her leave beyond nine (9) weeks (i.e., the end of August). When Ms. Flagg responded that she was entitled to 12 weeks of leave under FMLA, and reiterated that she intended to return to work at the conclusion of that 12-week period (i.e., September 28, 2009), she was accused of lying and attempting to improperly extend her leave. On September 8, 2009, Dr. Miller sent an email in which he stated that Ms. Flagg was only allowed to take a six (6) or eight (8) week leave under FMLA due to the birth of a child, and that Ms. Flagg would have to meet with representatives of the Board of Education before being allowed to return to work. *See* attached **Exhibit "C."**

15. Ms. Flagg advised her employer that she was prepared to return to work on September 28, 2009, the conclusion of her approved 12-week leave.

16.     On or about September 28, 2009, Defendant advised Ms. Flagg that she was not allowed to return to work, and that she was being placed on "paid administrative leave" until further notice.  Ms. Flagg was never permitted to return to her Business Manager position.

17.     Subsequently, on or about October 20, 2009, Defendant voted to terminate Ms. Flagg's contract.  In a letter dated October 20, 2009, Dr. Miller advised Ms. Flagg of the Board's decision.  This letter explicitly states that Ms. Flagg's employment has been terminated "without cause."  **Exhibit "D."**

18.     The October 20, 2009 letter further offered Ms. Flagg an alternative position, as Office Manager at Corunna High School, at significantly reduced pay and benefits.  This offer of "alternative" employment represented a significant demotion, and was not accepted by Ms. Flagg.

19.     Defendant has terminated Ms. Flagg's employment, effective November 6, 2009.

## COUNT I – Interference with Exercise of Rights under FMLA

20.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-19 above, as if set forth fully herein.

21.     At the time she requested leave due to the birth of her child, Ms. Flagg was an eligible employee under FMLA, because she had been employed by Defendant for more than 12 months, and had worked more than 1250 hours in the 12-month period prior to requesting her leave.

5

22. As alleged above, Defendant is an employer as that term is defined under FMLA.

23. Plaintiff was entitled to up to 12 weeks of leave under FMLA due to the birth of her child.

24. In February, 2009, Plaintiff gave her employer notice of her intention to take leave under FMLA, due to the birth of her child, commencing in early July, 2009. Moreover, Defendant confirmed this FMLA leave by letter to Plaintiff dated July 8, 2009.

25. Plaintiff was entitled to up to twelve weeks of leave, and was entitled to not be forced to work or perform services on her employer's behalf during this time. In addition, Plaintiff was entitled to reinstatement to her former position, or to an equivalent position, at the conclusion of her leave.

26. Contrary to law, Defendant, acting for itself or by and through its other employees and agents, including but not necessarily limited to Superintendent Mark Miller, wrongfully interfered with Plaintiff's exercise of her rights under FMLA in the following ways:

 a. By requiring Plaintiff to work and provide services on her employer's behalf during her leave;

 b. By not allowing Plaintiff to take up to twelve weeks of leave, as required by FMLA, but instead insisting that Plaintiff was only entitled to nine weeks of leave, and requiring Plaintiff to produce a doctor's note to justify any further leave time; and

 c. By refusing to reinstate Plaintiff to her former position at the conclusion of her FMLA leave, or to offer her an equivalent position. Instead,

27. As a proximate result of Defendant's wrongful interference with her rights under FMLA, Plaintiff has suffered economic harm and damage, including but not limited to loss of wages and benefits.

28. Further, Defendant's actions were intentional and in bad faith, and Defendant knew or reasonably should have known that those actions would violate Plaintiff's rights under FMLA. Therefore, Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. §2617(a).

### Count II – Retaliation

29. Plaintiff incorporates by reference the allegations of paragraphs 1-28 above, as if set forth fully herein.

30. As alleged above, Plaintiff exercised or attempted to exercise her rights under FMLA by requesting a twelve week leave of absence due to the birth of her child, and by requesting reinstatement to her prior position at the conclusion of that twelve-week leave.

31. At all relevant times, Plaintiff was an "eligible employee" as defined under FMLA, and she was statutorily entitled to the requested leave and to reinstatement in her prior position, or an equivalent position.

32. Instead of reinstating Plaintiff to her prior position at the conclusion of her leave, Defendant offered Plaintiff the choice of accepting a much lower position, with

significantly reduced salary and benefits, or of being fired. Plaintiff refused to accept the lower position, and thus her employment was terminated.

33. Plaintiff's exercise of her rights under FMLA was at least a substantial factor and cause leading to Defendant's decision to terminate her employment and to deny her reinstatement to her previous position.

34. As a result of Defendant's actions, Plaintiff has suffered economic harm and damage, including but not limited to loss of wages and benefits.

35. Further, Defendant's actions were intentional and in bad faith, and Defendant knew or reasonably should have known that those actions would violate Plaintiff's rights under FMLA. Therefore, Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. §2617(a).

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as to Counts I and II above, and against Defendant, and award Plaintiff such damages as she may be entitled, including but not limited to:

(a) The value of her wages, salary, employment benefits and other compensation of which she has been deprived as a result of Defendant's violations of the FMLA;

(b) Any and all other actual monetary losses suffered by her as a result of Defendant's violation of FMLA;

(c) Interest on the amount of damages determined;

(d) Liquidated damages as provided by 29 U.S.C. §2617(a); and

(e)     Fees and costs, including a reasonable attorney's fee, reasonable expert witness fees, and other costs and fees of this action payable by Defendant pursuant to 29 U.S.C. §2617(a)(3).

## Count III – Breach of Contract

36.     Plaintiff incorporates by reference the allegations of paragraphs 1-35 above, as if set forth fully herein.

37.     As alleged in the preceding paragraphs, Plaintiff was employed by Defendant pursuant to a written employment Agreement. Under the Agreement, Plaintiff was entitled to accrue and accumulate paid time off, and to use said paid time off as a benefit, in order to be compensated, even when Plaintiff did not actually perform work for Defendant on certain occasions. Further, under the Agreement, if Plaintiff performs work for Defendant, she is entitled to be paid her salary, rather than be paid by depleting her bank of accrued time off.

38.     During Plaintiff's twelve-week FMLA leave, she continued to be paid her regular salary. Defendant depleted her bank of accrued, unused paid time off to accomplish this.

39.     As alleged in the preceding paragraphs, however, contrary to the requirements of FMLA, Defendant required Plaintiff to devote substantial time to work-related endeavors during her leave, and occasionally required Plaintiff to report to work to attend to job-related matters.

40.     Plaintiff was not paid her salary for the work she performed on her employer's behalf during her FMLA leave.

41. Instead, contrary to her employment Agreement, Defendant deducted time from her bank of accrued, unused paid time off in order to compensate Plaintiff, even though she was performing work on Defendant's behalf during her leave.

42. Defendant's actions in this regard constitute a material and substantial breach of the employment Agreement between Plaintiff and Defendant

43. As a result of Defendant's breach of contract, Plaintiff has suffered damage including, but not limited to, the deprivation and loss of previously accrued, unpaid time off.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and award Plaintiff her damages as she may be entitled, along with costs and fees, including a reasonable attorney's fee, reasonable expert witness fees, and other costs and fees taxable to Defendant, together with such other and further relief as this Court may find equitable and just under the circumstances.

### Count IV – Wrongful Discharge/Violation of Public Policy

44. Plaintiff incorporates by reference the allegations of paragraphs 1-43 above, as if set forth fully herein.

45. As alleged in the preceding paragraphs, Plaintiff exercised and/or attempted to exercise her rights under the FMLA, in order to take a leave of absence due to the birth of her child.

46. Defendant terminated Plaintiff's employment in violation of the FMLA and/or to evade Defendant's responsibilities under FMLA.

47.     The public policy of the State of Michigan favors requiring Michigan employers to abide by all state and federal employment laws to which they are subject, including FMLA.

48.     Even if it is determined that Plaintiff's employment was "at will," under Michigan law, Defendant's termination of Plaintiff's employment in violation of FMLA and/or to evade its responsibilities under FMLA is a violation of the public policy of the State of Michigan, and therefore constitutes a wrongful termination in violation of Michigan law.

49.     As a result of Defendant's wrongful termination of her employment, Plaintiff has suffered significant damages, including but not limited to loss of wages and other employment benefits, as well as humiliation, emotional distress and mental anguish.

50.     Defendant's actions were reckless and/or intentional, and done with either knowledge that Defendant was violating FMLA, or complete indifference to whether or not Defendant was violating FMLA, and thus punitive damages should also be awarded to Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and award Plaintiff her damages as she may be entitled, along with costs and fees, including a reasonable attorney's fee, reasonable expert witness fees, and other costs and fees taxable to Defendant, and punitive damages, together with such other and further relief as this Court may find equitable and just under the circumstances.

                                    **Respectfully submitted,**

Dated:  December 15, 2009                 /s/*Kevin J. Roragen*
                                    Kevin J. Roragen (P56510)
                                    LOOMIS, EWERT, PARSLEY,
                                        DAVIS & GOTTING, P.C.
                                    Attorneys for Plaintiff
                                    124 W. Allegan Street, Suite #700
                                    Lansing, MI  48933
                                    (517)  482-2400  telephone
                                    (517)  853-8619  fax
                                    Email:  kjroragen@loomislaw.com

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable in this matter.

                                    **Respectfully submitted,**

Dated:  December 15, 2009                /s/ *Kevin J. Roragen*
                                    Kevin J. Roragen (P56510)
                                    LOOMIS, EWERT, PARSLEY,
                                        DAVIS & GOTTING, P.C.
                                    Attorneys for Plaintiff
                                    124 W. Allegan Street, Suite #700
                                    Lansing, MI  48933
                                    (517)  482-2400  telephone
                                    (517)  853-8619  fax
                                    Email:  kjroragen@loomislaw.com